**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| NAM S. PARK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:14-cv-04242 |
| | ) | |
| v. | ) | Honorable James B. Zagel |
| | ) | |
| PULSARLUBE USA, INC. | ) | **Jury Demand** |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, NAM S. PARK, by and through her counsels, SAMUEL SHIM and HYO JUNG KIM, submits her memorandum of law in opposition to defendant's motion for summary judgment, and states as follows:

### INTRODUCTION

During the plaintiff's employment with the defendant company, she was subjected to repeated sexual harassment by her superior. The plaintiff's entreaty to her employer to investigate and stop her superior's harassment was generally ignored, and after an alleged investigation, the plaintiff was terminated from her employment.

In response to her termination, the plaintiff filed a complaint against the defendant alleging the unlawful sexual harassment in violation of Title VII, 42 U.S.C. § 2000, *et seq.* and that the plaintiff was unlawfully retaliated against for complaining of sexual harassment in violation of 42 U.S.C. §2000-e3, as amended.

Defendant has moved for summary judgment on both counts. It argues that the sexual harassment and retaliation claims must be dismissed because defendant was not sexually harassed and that it justified in terminating the plaintiff due to her poor job performance. On the contrary, plaintiff's allegations of sexual harassment stands completely unrebutted. None of

1

defendant's arguments squarely deal with that fact. Defendant's failure to do so is a reason enough for this court to deny its motion for summary judgment.

## SUMMARY OF MATERIAL FACTS

The plaintiff was hired around November 28, 2011 in the production department of Pulsarlube, the defendant company. The production department had only three employees when the plaintiff was employed: production manager Mr. Daniel Jeong (hereinafter "Manager JEONG"), Jang Won Kim a/k/a Bong Seok Kim a/k/a Ben Kim (hereinafter "KIM") and the plaintiff. The company has a female manager at the administrative department, Ms. Miso Shin (hereinafter "Manager SHIN"). Manager JEONG and Manager SHIN are equal in the hierarchy and Manager SHIN was in a separated location of the company. Manager JEONG was in charge of all matters in the production department.

The plaintiff and KIM previously worked for a same company, but in different departments, before they worked for Pulsarlube. KIM started working for Pulsarlube first and later suggested that the plaintiff also work for Pulsarlube. KIM also recommended the plaintiff to Manager JEONG. KIM and Manager JEONG did the main work and the plaintiff assisted them.

Soon after the plaintiff started working at the production department with KIM, he showed interest in the plaintiff and repeatedly suggested that the plaintiff go see a movie, go out and eat in good restaurants, or go play ping pong with him. Plaintiff tried to avoid KIM. KIM was married. One time the plaintiff reluctantly saw a movie with KIM due to his unceasing insistence, but she regretted it and refused to see KIM outside of work.

As KIM and the plaintiff worked closely together, KIM made sexual comments such as "you are pretty," and "I'm happy because of you." KIM often used an unnecessarily big cart to go to the isolated, dark warehouse area and told the plaintiff to assist him with moving the cart and opening the doors, and when they got to the warehouse, KIM made comments such as "I like being just with you," and "don't tell Manager Jeong." KIM also made comments such as "touch my arm and feel my muscles. I want to hug you and sleep with you in my arm at that corner"

while rolling up his sleeve and pointing to a corner of the room. The plaintiff felt scared and disgusted and tried to avoid KIM as much as possible.

One day, KIM asked the plaintiff to delete files from his ipad. When the plaintiff approached KIM, he showed the plaintiff pictures of naked women, showing pubic hair. The plaintiff got shocked and immediately turned her head away. Manager JEONG saw this. The plaintiff testified that Kim would attempt to touch her breasts. Kim's attempts in that regard cause hostility or work especially since she was there to work, not to be touched or patted. Although Kim did not specifically tell the plaintiff that he wanted to touch her, since he said he wanted to sleep in the plaintiff's arms, plaintiff interpreted it as much. KIM's sexual harassment got worse and worse. KIM followed the plaintiff everywhere she went and often came so close that his body touched the plaintiff's. When the plaintiff was reaching for an item, KIM reached for the same or an adjacent item from the plaintiff's behind, so his body touched the plaintiff's. KIM sat next to the plaintiff and moved his arms around while yawning or moved his legs or feet during production department meetings, and while doing that, his arm touched the plaintiff, and Manager JEONG told KIM to hold a right posture. During production department's Friday lunch at restaurants, KIM sat next to the plaintiff and leaned towards the plaintiff beyond a half of the plaintiff's seat and Manager JEONG had the plaintiff sit next to Manager JEONG and eat. KIM's constant following, looking, monitoring and bumping made the plaintiff get scared.

In October, 2013, the plaintiff talked to the female manager at the administrative department, Manager SHIN, about KIM's harassment. Manager SHIN initially advised the plaintiff to go to a police station. KIM's behavior got worse and the plaintiff talked to Manager SHIN again about KIM's behavior. Manager SHIN came to the production area and talked to KIM. KIM got so mad and said "You, fool! Whack!" to the plaintiff, gesturing as if he would hit the plaintiff. Manager SHIN advised the plaintiff to talk to KIM and Manager JEONG to try to resolve the conflict and to understand KIM.

In November, 2013, the plaintiff went to Elk Grove police station with her daughter and reported KIM's sexual harassment. The plaintiff does not speak English well and her daughter interpreted for the plaintiff. The plaintiff did not want to file a criminal charge against KIM but instead she asked the police officer to talk to KIM to stop his harassment because she wanted to continue working for Pulsarlube and she only wanted KIM to stop the harassing behavior. Police officer Rohman called Manager SHIN on the phone, talked to Manager SHIN and KIM and warned KIM to stop the harassment. KIM got very mad after he talked to the police officer.

Manager JEONG assigned new "UPS jobs" that was previously handled exclusively by Manager JEONG to the plaintiff so that the plaintiff did not have to physically work with KIM. Manager JEONG also instructed KIM and the plaintiff to use different ways while working so that they do not bump into each other. However, KIM continued to and even more often, suddenly walk in front of the plaintiff when the plaintiff was walking and bumped, saying that he was just going to the bathroom. The plaintiff complained to Manager SHIN about this. Manager SHIN advised the plaintiff that the company cannot start any investigation until the plaintiff submits a complaint in writing. The plaintiff submitted the total of three written complaints since Manager SHIN insisted that the plaintiff provide exact dates and details. Manager SHIN instructed the plaintiff to write down the best she could remember, not "everything." While the plaintiff submitted reports after reports, KIM's harassing behavior continued and the plaintiff encountered KIM in loud voices many times and talked to Manager SHIN about those almost daily.

On or around January 20, 2014, Manager SHIN called the plaintiff in to her office and said she could either accept the severance agreement, under which the plaintiff gives up all her rights against the company and promises not to say or do anything detrimental to the company in exchange for two week's pay, or a simple dismissal. The plaintiff said to Manager SHIN that she did not bring this up to get fired but to stop KIM's harassment and to continue working. Manager SHIN advised that it was a loss to the company that there was an ongoing conflict between the

plaintiff and KIM and the company could not let the plaintiff work anymore. The plaintiff did not accept the severance agreement.

As basis for firing the plaintiff, the defendant alleges that the plaintiff lied and did not cooperate in the sexual harassment investigation and that the plaintiff's job performance was poor. However, the basis of the defendant's accusation that the plaintiff lied and did not cooperate in the investigation was that the date when the plaintiff saw a movie with KIM one time did not match in her second and third written complaints. The plaintiff could not remember the exact date, so she did not write any date in her first complaint, provided an approximate date in her second complaint, and later looked up her old diary and provided the exact date in her third complaint. Also, the company never had a written performance evaluation before the plaintiff reported KIM's sexual harassment and never again after the plaintiff was fired. The reason for evaluating the plaintiff's performance to be poor was because the plaintiff did not show teamwork, due to her conflict with KIM, and because she did not perform well on her newly assigned "UPS jobs" originally handled by Manager JEONG exclusively. Defendant has no set policy on harassment, and it has no employee handbook.

## ARGUMENTS

**I.    SUMMARY JUDGMENT STANDARDS**

The Seventh Circuit has stated that courts should apply summary judgment standards with added rigor in employment discrimination cases because intent and credibility are crucial issues, and summary judgment should be granted only where, if the record had been that of a complete trial, the defendant would have been entitled to a directed verdict. *See, e.g., Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) (reversing summary judgment in age discrimination case); *Loughman v. Malnati Org., Inc.*, 395 F.3d 404,408 (7th Cir. 2005)(summary judgment denied where there were genuine issues of material fact as to whether three incidents of sexual harassment of female restaurant employee by male co-workers created a hostile work environment). "The 'ultimate question of discrimination' ... is best resolved by the

5

trier of fact, whose function is to choose among competing inferences and make credibility determinations." *Courtney v. Biosound, Inc*., 42 F.3d 414, 424 (7th Cir. 1994).

**II.     DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE SEXUAL HARASSMENT CLAIM.**

Defendant seeks summary judgment on plaintiff's sexual harassment claim set forth in Count I on the grounds that the facts demonstrate that "[t]here simply was no harassment, …." (Deft. Br. p.11) Defendant simply ignores the clear and unrebutted evidence of sexual harassment in arguing that this court should grant summary judgment in its favor. Defendant's anemic analysis misses mark.

Courts have interpreted Title VII to prohibit employers from forcing employees to "work in a discriminatory hostile or abusive environment." *Perez v. Globe Ground North America LLC*, 482 F.Supp.2d 1023, 1029 (N.D. Ill. 2007)(*citing, Shanoff v. Ill. Dept. of Human Serv*., 258 F.3d 696, 701 (7th Cir. 2001); *Harris v. Forklift Sys., Inc*. 510 U.S. 17, 21 (1993)). In order for a sexually hostile work environment claim to survive a motion for summary judgment, the plaintiff must present evidence that creates genuine issues of material fact as to whether: 1) she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 2) the conduct was severe or pervasive enough to create a hostile work environment; 3) the conduct was directed at her because of her sex; and 4) there is a basis for employer liability. *Quantock v. Shared Mktg. Servs*., 312 F.3d 899, 903 (7th Cir. 2002); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002). The law is clear that the sexual harassment need not be both severe and pervasive to be actionable; one or the other will do. *Smith v. Sheehan*, 189 F.3d 529, 533 (7th Cir. 1999). Here, however, the plaintiff can show that KIM's sexual harassment was objectively and subjectively severe and pervasive.

**A. Objections To Defendant's Supporting Materials Under Rule 56(c)(2).**

As a preliminary matter, defendant has filed various exhibits in support of its motion for summary judgment. Exhibit A is the deposition transcript of DANIEL JEONG, one of the managers of defendant corporation during the relevant time period.

Defendant has also filed Exhibit B which consists of MISO SHIN's declaration, two letters dated December 3, 2013 and December 10, 2013, and a six-page report drafted by MISO SHIN detailing the incident. The plaintiff objects to defendant's Exhibit B, with the exception of the declaration of MISO SHIN, where those materials cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Letters written by Manager SHIN constitute inadmissible hearsay. *See* Fed. R. Evid. 801(c). The six-page report authored by Manager SHIN is likewise inadmissible hearsay where it does not fall under the exceptions enumerated in Rule 803 of the Federal Rules of Evidence. Manager SHIN's declaration which purports to establish the report as a "business record" fails to satisfy the requirements under Rule 803(6)[1]. Hence, they are inadmissible hearsay and cannot be considered under Fed. R. Civ. P. 56(c)(2). *See Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 942 (7th Cir. 2012)(explaining that inadmissible hearsay is properly disregarded on summary judgment (*citing* Fed.R.Civ.P. 56(c)(2))).

Defendant has also filed Exhibit C which consists of a declaration of JANE PARK, one of the defense counsels (hereinafter "Attorney PARK"), and a 13-page document purporting to be the English translation of statements purportedly written by the plaintiff and KIM, the alleged harasser, in Korean. The fact that the defense counsel translated the statements does not get around the Hearsay rule. While it may be argued that plaintiff's statement is not hearsay as a party-opponent's statement under Rule 801(d)(2), KIM's statement is clearly inadmissible

---

[1] Under Rule 803(6), Records of a Regularly Conducted Activity are not excluded as Hearsay.

"A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C) making the record was a regular practice of that activity;
(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E) neither the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)

hearsay. Furthermore, defendant has not bothered to attach a copy of the statements written in Korean so that the plaintiff may have an opportunity to assess whether the translation is true and accurate. The translation is obviously not a literal translation of any of the previously produced statements written in Korean since none of them match in terms of quotation marks. The translation is also of questionable value where Attorney PARK is not sure of whether the statements were in fact written by the plaintiff and KIM where she states the "statements were provided to me, *presumably* as written by the declarants, in the Korean language." (Deft Exh. C, Jane Park Declaration ¶5)(Emphasis added). Finally, it is apparent that defendant is selective in what it is filing by way of supporting materials. Document 40-2, page 3 of 16 purports to be plaintiff's second complaint. Page 12 of 16 then states that plaintiff's "initial complaint is missing." Defendant's Exhibit C simply is unworthy of belief, aside from the fact that they are inadmissible. Therefore, this court should not consider Exhibit C under Fed. R. Civ. P. 56(c)(2). *See Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 942 (7th Cir. 2012).

**B. The Unrebutted Evidence of Sexual Harassment Precludes Summary Judgment In Favor of Defendant.**

The plaintiff's deposition testimony detailing instances of sexual harassment and other malfeasance on the part of her superior Kim stands unrebutted. *See supra*, pp. 2-4. *Compare Valentine v. City of Chicago*, 452 F.3d 670 (7th Cir. 2006)(factual issue existed as to whether co-worker's comments or gestures directed toward employee on nearly daily basis, and touching employee on half dozen occasions, were sufficiently severe and pervasive to constitute hostile work environment sexual harassment.). Where the plaintiff's testimony goes unrebutted, defendant's motion for summary judgment must fail. As will be analyzed below, defendant's attempt at obfuscating the issues by proffering unconvincing and contrived reasons for terminating the plaintiff further buttresses plaintiff's allegations of sexual harassment and retaliation.

**III.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE RETALIATION CLAIM.**

Defendant seeks summary judgment on plaintiff's retaliation claim set forth in Count II on the grounds that it had a legitimate non-discriminatory reason for terminating the plaintiff. Defendant's claims are meritless and should be rejected where it is apparent that there are litany of genuine issues of material fact which must be decided by the jury in this case.

Title VII's anti-retaliation provision makes it unlawful for an employer to "discriminate against" an employee "because he has opposed ...an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Plaintiff can prove retaliation using either the direct or indirect method of proof. Under the direct method, a plaintiff can prove retaliation by presenting direct evidence of 1) a statutorily protected activity; 2) an adverse action taken by the employer; and 3) a causal connection between the two. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir.2003). The Seventh Circuit has held that a plaintiff may offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

### A. The Plaintiff Has Established A *Prima Facie* Case of Pretext.

Establishing a *prima facie* case creates a presumption that the employer unlawfully discriminated against the plaintiff. *See, e.g., Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This shifts the burden to the employer to rebut the presumption with evidence that it acted as it did for a non-discriminatory reason. *Id.* at 253. If the defendant produces evidence of such a reason, the burden shifts back to the plaintiff to present evidence sufficient to create a fact issue as to whether the employer's stated reasons are mere pretext. *Id.*

At the pretext stage, the plaintiff has at least two ways to show the existence of a material question of fact: it can proceed "indirectly by showing that the employer's proffered explanation is unworthy of credence" because it has no basis in fact or proceed "directly by persuading the court that a [prohibited] reason more likely motivated the employer" *Burdine*, 450 U.S. at 256.

9

To meet its burden, the plaintiff does not have to dispel all proffered lawful motives for defendant's actions. Rather, it must show merely that a reasonable jury considering all the evidence could conclude, by a preponderance of the evidence, that discrimination "constituted a motivating factor" in defendant's decision. *See, e.g., Murphy v. M.C. Lint, Inc*., 440 F. Supp.2d 990, 1014 (S.D. Iowa 2006)(*citing Jackson v. Missouri P. R. Co*., 803 F.2d 401, 407 (8th Cir. 1986)). Here, the plaintiff can succeed under either the direct or indirect methods because the evidence shows that defendant's explanation for firing the plaintiff has no basis in fact and other evidence supports the plaintiff's allegation of retaliation.

### B. The Plaintiff Has Established Retaliation under the Direct Method

The plaintiff has certainly demonstrated that she engaged in protected activity. *See*. The plaintiff complained about KIM's sexual harassment many times to both Manager JEONG (JEONG Dep. pp. 108-110), Manager SHIN (PARK Dep. pp. 39-41, 61; SHIN Dep. pp. 77-78) and to the police (Pltf Exh. 2; PARK Dep. pp. 144-145). (See also Pltf Exh. 3, SHIN Statements) The plaintiff also submitted the total of three written complaints upon Manager SHIN's requests. (See Plaintiff's first written complaint, SHIN Dep. exhibit 10; Plaintiff's second written complaint, PARK Dep. exhibit 2, SHIN Dep. exhibit 8; and Plaintiff's third written complaint, SHIN Dep. exhibit 11)

The plaintiff has also presented evidence that she suffered an adverse action in that she was terminated four days after Attorney PARK concluded that evidence was insufficient to establish sexual harassment. The only issue remaining is whether the plaintiff can establish a causal link. If an employee is fired not long after complaining about discrimination, the suspicious timing supports an inference of retaliation. *Sylvester v. SOS Children 's Vills. III., Inc*., 453 F.3d 900, 905 (7th Cir. 2006). For instance, if an adverse action occurs just one month after complaints about discrimination, a jury can infer intent to retaliate. *Boumehdi*, 489 F.3d at 786- 87, 793.

In the instant case, in October, 2013, the plaintiff made a formal complaint of sexual harassment to Manager SHIN. Thereafter, the plaintiff continued to make complaints to her manager regarding KIM which prompted Manager SHIN asked plaintiff to submit a written document detailing her allegations. The plaintiff submitted three separate documents detailing the allegations of sexual harassment, each time pursuant to Manager SHIN's request. Manager SHIN also requested a written response from the alleged perpetrator KIM, and those documents were then submitted to Attorney PARK for her investigation as to whether or not sexual harassment had occurred.

On or about January 16, 2014, defendant's counsel concluded that there was insufficient evidence to support the allegations of sexual harassment, and then four days later on January 20, 2014, the plaintiff was terminated from her employment. (Pltf Exh. 7) Even if October, 2013 is used as the relevant starting point, approximately three months elapsed between the plaintiff's first complaint and her termination. However, if the date of the defendant's determination that plaintiff's allegations were insufficient is used as the starting point, the mere four days had elapsed prior to the plaintiff being fired. In either scenario, the lapse of time between the plaintiff engaging in protected activity and her eventual termination raises it more than sufficient inference of retaliation on the part of the defendant.

Moreover, there is clear and direct proof that retaliation was the only motive behind plaintiff's termination. While defendant contends for the first time that the only reason for her termination was due to her disruptive behavior (Deft. Mot. p. 13-15), defendant had previously stated that plaintiff's termination was due to her submitting a false statement on December 13, 2013 regarding KIM's harassment and for making mistaking in making UPS shipping labels. (Pltf Exh. 1, ¶ 21) Defendant's clear declaration that plaintiff was fired for engaging in protected activity establishes beyond all doubt that retaliation was the only motive. *Compare Phelan v. Cook County, et al.,* 463 F.3d 773 (2006)(issues of fact existed as to whether county acted with retaliatory motive when it decided to terminate employee); *Malin v. Hospira, Inc. et al.*, 762 F.3d

11

552 (7th Cir. 2014)(Grant of summary judgment reversed where genuine issue of material fact existed as to whether employer retaliated against employee because she complained of sexual harassment by a supervisor.); *Carwyle v. Anna Hospital Corporation*, 102 F.Supp3d 1024, 1033 (S.D. Ill. 2015)(fact issue remained whether there was causal link between nurse's protected activity and adverse employment action, thus precluding summary judgment on claim for retaliation; and fact issues remained whether county hospital knew harassment and retaliation, thus precluding summary judgment for hospital); *Benitez v. American Standard Circuits, Inc*., 678 F.Supp.2d 745 (N.D. Ill. 2010)

Defendant, however, argues that it presented a legitimate, non-pretextual reason for plaintiff's termination. The issue of pretext, however, is irrelevant where retaliation is established under the direct proof method. As the Seventh Circuit held in *Stone v. City of Indianapolis Pub. Utils. Div*., 281 F.3d 640, 643 (7th Cir. 2002), "if the Plaintiff has produced evidence that he was fired because of his protected expression, he has gone beyond *McDonnell Douglas* by producing actual evidence of unlawful conduct - evidence that the firing was in fact retaliation for his complaining about discrimination. The fact that the Defendant may be able to produce evidence that the plaintiff was fired for a lawful reason just creates an issue of fact, to-wit: what was the true cause of the termination. Defendant's argument that the true cause for plaintiff's discharge was for her alleged "disruptive behavior" is therefore an issue for the jury. It is not an appropriate basis to support a motion for summary judgment.

### C. The Plaintiff Has Established Retaliation under the Indirect Method

Plaintiff can also defeat summary judgment under the indirect method of proof. Retaliation under the indirect method requires plaintiff to show that 1) she engaged in statutorily protected activity; 2) she was performing according to his employees legitimate expectations; 3) she suffered an adverse employment action; and 4) she was treated less favorably than similarly situated employees that did not engage in the statutorily protected activity. *See Stone*, 281 F.3d at 644.

As pointed out above, the plaintiff's complaints to Manager SHIN that KIM was sexually harassing her is a protected activity thereby satisfying the first element. Plaintiff has also presented a genuine issue of material fact as to whether she was performing his job satisfactorily. When asked what he thought of the plaintiff as an employee, Manager JEONG answered, "normal." (JEONG Dep. p.46) Manager JEONG later testified that "[t]here's nothing written but I evaluated that there was no problems, that she would continue to do a good job." (JEONG Dep. p. 75) Defendant's decision to all of a sudden conduct employee performance evaluation soon after plaintiff complained of KIM's sexual harassment betrays its true motive, to-wit: fabricate a pretext for her eventual termination. Manager JEONG specifically testified that prior to plaintiff working for defendant, the company did not perform individual performance evaluations. (JEONG Dep. p. 41) He further testified that that performance evaluation was done either on December 29 or 30, 2013. (JEONG Dep. p.132) Moreover, JEONG testified that plaintiff's evaluation done on December 30, 2013 was done for the first time in the history of Pulsarlube. (JEONG Dep. p.137) Finally, per the company policy, the employee's performance evaluations were not even shown to the employees after its completion, according to JEONG. (JEONG Dep. p.137-38)

It is undisputed that prior to his complaints of discrimination, plaintiff was satisfying defendant's expectations and performing at the same or higher level than her peer. A reasonable jury could easily conclude that defendant's decision to all of a sudden conduct an employee evaluation twenty days before plaintiff was fired nothing more than defendant's attempt at fabricating a pretext for plaintiff's eventual termination. . This conclusion is especially warranted as the relatively poor performance evaluation followed on the heels of plaintiff's complaint of sexual harassment without any previous performance warnings. Finally, as demonstrated above, the plaintiff has presented a genuine issue of material fact as to whether she was treated less favorably than other similarly situated employees and has cast doubt on the proffered reason given by defendant for terminating her. Under these facts, the plaintiff is entitled to proceed to a

13

jury on her retaliation claim. The fact that KIM was also fired, when by all accounts, he had done nothing wrong. Accordingly, summary judgment must be denied on Count II.

### D. Defendant's Reason for Terminating Plaintiff was Pretextual

The plaintiff has produced evidence from which a rational fact-finder could infer that defendant's proffered reason for terminating her was not the true reason she was terminated. Indeed, it is well-established that "we need not take an employer at its word... if the employee offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case turns on the credibility of the witnesses." *Collier v Budd*, 66 F.3d 886, 893 (7th Cir. 1995). In such circumstances, the employee creates a factual issue as to whether the employer's explanation is credible or merely a pretext for discrimination. *Dey*, 28 F.3d at 1461. As this Court pointed out in *Sinio*, all that the plaintiff must do to reach a jury is cast doubt on defendant's justification for terminating her. Summary judgment is only appropriate when no rational fact-finder could find that defendant lied about the reason it terminated the plaintiff. Id. The evidence offered by plaintiff is certainly sufficient to cast doubt on defendant's reason for terminating her.

### i. Defendant's Change In Its Reason For Firing the Plaintiff Precludes Summary Judgment

Defendant has changed its explanation for firing the plaintiff. First, defendant stated that plaintiff had been fired for submitting false claims of sexual harassment against a coworker. (Pltf Exh. 1, ¶. 21) Then, in its motion for summary judgment, defendant now claims that the official reason for plaintiff's termination was due to her disruptive behavior. (Deft. Mot. p. 13-15, See also Shin Dep. pp. 151-51, 160) In and of itself, this change in explanations creates a genuine issue of material fact that precludes summary judgment. *See, e.g., Murphy v. M.C.Lint, Inc.*, 440 F. Supp.2d 990, 1014 (S.D. Iowa 2006)("plaintiff's strongest argument" that retaliation or discrimination constituted a motivating factor in her discharge was that "defendants have offered shifting explanations for her termination, such that an inference of pretext may arise"); *Allen v. Chicago Transit Auth*ority, 317 F.3d 696 (7th Cir. 2003)(where defendant gave inconsistent

explanations about failure to promote plaintiff which were not supported by documentary evidence, court held that summary judgment is not appropriate when a jury could believe because the proffered reason is challenged by substantial evidence).

Further, where the moving party's version of the facts is based solely on self-serving assertions, assertions to the contrary by the non-movant may be sufficient to create a material issue of fact that will defeat summary judgment. *Szymanski v. Rite- Way Lawn Maintenance Co.*, 231 F.3d 360,364-366 (7th Cir. 2000). Here, there is ample evidence to refute defendant's self-serving assertions. Most glaring of which is the fact that defendant advised the Illinois Department of Employment Security that plaintiff was fired for submitting false claims of sexual harassment.

### ii. There Was A Causal Connection Between the Plaintiff's Firing And Her Sexual Harassment Complaints.

As noted above, the temporal proximity between plaintiff's complaints about KIM's harassment to Manager SHIN and the subsequent firing of plaintiff strongly suggests that the firing was the result of the sexual harassment complaint - and that defendant's stated reasons for firing her were pretextual. Further, a court is generally precluded from granting summary judgment in cases in which issues of intent, good faith, and other subjective feelings play dominant roles. *See Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006).

### iii. Defendant's Explanation For Firing the Plaintiff Has No Basis In Fact.

The plaintiff also can establish pretext by showing that defendant's ever-shifting explanations for firing her have no basis in fact. The testimony of plaintiff refutes defendant's allegations that plaintiff had submitted false accusations of sexual harassment, which stands unrebutted, or that she had been disruptive during her employment with defendant.

### CONCLUSION

For the foregoing reasons, the plaintiff, Nam Park, request that this Court deny, in its entirety, the Motion for Summary Judgment filed by the Defendant Pulsarlube USA, Inc.