# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NAM S. PARK,

  Plaintiff,

  v.

PULSARLUBE USA, INC.,

  Defendant.

No. 14 C 4242
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

  Before the Court is Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, Defendant's motion is granted.[1]

## I. BACKGROUND

  Plaintiff Nam S. Park (Park) alleges both unlawful sexual harassment and retaliation under Title VII, 42 U.S.C. § 2000, *et seq*. against Defendant Pulsarlube USA, Inc. (Pulsarlube). Defendant Pulsarlube is a limited liability company operating in Illinois. It produces and supplies machinery and lubricant that are used to grease ball bearings in other machinery.

  Park was employed in the production department of Pulsarlube from November 2011 until January 2014. Park worked in the production department with two other employees, her superior, production manager Daniel Jeong (Jeong), and a coworker, Jang Won Kim (Kim). Kim was already employed at Pulsarlube when Plaintiff Park began working there. Jeong, Park, and Kim worked in a 3,000 square foot room in close proximity to one another.

  Park claims that Kim began sexually harassing her early on in her employment at Pulsarlube. She recalls that he found excuses to get physically close to her by placing work

---

[1] I have carefully reviewed and considered the parties' Rule 56 statements in the format they were submitted, despite the procedural deficiencies and the June 16, 2016 Order (See Docket 57) to refile them pursuant to the Local Rules. As such, the parties need not refile their statements.

1

materials near her and to be alone with her by inventing reasons to go to a secluded warehouse together. Plaintiff alleges that Kim sat overly close to her at group lunches, so much so that Jeong requested that she change seats. Park also claims that when driving to such lunches, Kim would make constant eye contact with her using the rear view mirror as she sat in the back seat.

Park alleges that Kim made comments to her that she believed to be inappropriate, such as remarking that he liked to be close to her. Park claims that Kim repeatedly asked her to go out to eat with him and go to the movies with him. On one occasion, Park accepted Kim's invitation to see a movie together. Park further claims that Kim asked her to help him delete images from his iPad, and when she approached, Kim showed her a photo of a nude woman on the iPad. She also alleges that Kim attempted to touch or pat her breasts.

Jeong witnessed several work-related, loud verbal disputes between Park and Kim, but was unaware of Kim's alleged sexual harassment of Park prior to October 2013, when Park brought her complaints to the company. Jeong also witnessed Kim touching Park's body with his arms, legs, and feet during meetings, and reprimanded Kim, telling him to stop.

In late October of 2013, after having worked at Pulsarlube for nearly two years, Park informed Miso Shin (Shin) that she was being harassed by Kim. Shin was a female manager in Pulsarlube's administrative department who did not work in production with Park, Kim, and Jeong. Park told Shin that Kim had been invading Park's privacy, continually watching Park, and unnecessarily interacting with her during work. Park also told Shin that "a long time ago" Kim had shown her a sexual picture on his iPad and asked her to help him delete it. Shin told Park that if Kim ever did anything like showing her sexual photos again, she should report it immediately.

On November 6, 2013, Park again complained to Shin and threatened to "call the cops"

on Kim because of his behavior. Shin then met with Kim and informed him of Park's complaints. Kim said that he did not understand what he was doing wrong. Shin asked him to avoid making eye contact with Park and told him that sharing inappropriate images at work was not allowed. Kim explained to Shin that Park had offered to help him erase images on his iPad, but that he understood the warning and would be more careful.

Shin then met with Jeong and asked him to pay attention to the situation. She enquired if Kim and Park's workstations could be relocated so as to further separate the two, but Jeong responded that it was not possible because there was not enough work for her elsewhere. He eventually assigned her to perform UPS mailing tasks that would allow Kim and Park to be physically separated.

About half an hour after her first meeting with Shin, Park returned to report to Shin that Kim was behaving even worse and intentionally doing the things that upset her because he knew they bothered her. Shin told Park that Kim was not sure what he was doing that was upsetting her, but to give him time to work on improving the situation. Later the same day, Shin observed that Park was still upset and gathered Park, Kim, and Jeong for a meeting. Park complained that Kim had been leaving the grease pouches he worked with close to her workspace. Kim represented that he did not know what he was doing wrong. When asked by Shin how the situation could be improved, Park responded that Kim had to stop behaving the way he had been behaving.

After this meeting, Shin returned to the administrative office and observed that some of the office workers were uncomfortable because they had heard Park yelling through the wall. That evening, Shin called Pulsarlube's owner in Korea to report that the dispute was having negative impacts on office productivity.

On November 15, 2013, Park's two adult children came to Pulsarlube, wanting to speak with Kim. Shin was unsure if this was allowed and sent them away, telling them they should meet at another time. Shin requested that Park provide her with a written account of the problems with Kim.

On November 27, 2013, Shin received a call on her personal cell phone while at work from a police officer from the Elk Grove police department. Park had given Shin's cell phone number to the police on November 22, when Park filed the police report.[2] Shin asked the police officer to call her back on her office phone and had Kim join her on speaker. The police officer told Kim to leave Park alone. After the phone call with the police, Kim and Park argued at the office. Shin told Park to turn in her detailed written account of her complaints as soon as possible.

In early December, Park gave Shin the promised written account. The account detailed Kim's behaviors that Park found offensive and incompatible with a work environment, and also acknowledged that she had attended a movie with Kim once in the two years that they had worked together. The next day, Shin provided Park with a document written in English informing Park that her allegations should provide specific details and the dates on which the events had occurred. Park does not speak or read fluent English, and she spoke Korean with coworkers while employed at Pulsarlube. Defendant Pulsarlube maintains that Shin also verbally communicated this to Park, while Park claims that the only communication of this message was in writing.

Soon thereafter, Shin gave Park a copy of Kim's response to Park's account. On either December 10 or 13, 2013, Park submitted a second written complaint, and later submitted a third

---

[2] Because Park communicates more easily in her native Korean than in English, she used her daughter as an interpreter when filing her police report.

complaint. Altogether, the complaints reiterated Park's unhappiness with many of Kim's previously discussed behaviors. She also claimed that Kim used curse words around her, eavesdropped on her phone conversations, timed his entering and exiting the building to coincide with hers, smiled strangely at her, and told her that she was pretty, "he was happy because of [her]," and that he wanted to "sleep with [her] at a corner" with his arms around her. (Ex. 4, Plaintiff's deposition transcript, 72). In her deposition in this lawsuit, Park admitted that Kim had never asked to touch her breasts, but claimed that he had "tr[ied] to kind of touch on or pat on, you know [her breasts]."

Also in early December 2013, Jeong paged Shin to come to the warehouse because Kim and Park were arguing loudly. Park accused Kim of getting too near to her; Kim claimed he had only been trying to access boxes he needed to do his work.

Meanwhile, Shin provided the written documentation that had been produced by Park and Kim to attorneys hired by Pulsarlube so they could provide counsel on how to address the situation. The Pulsarlube attorneys assessed the evidence provided and determined that there was not sufficient evidence of harassment. Shin reported this information to Pulsarlube's owner, who instructed Shin to fire both Park and Kim. Shin claims that both employees were fired because of the ongoing conflict, the disruptive work environment they created, and the lack of clear evidence of harassment. Park claims that she was told she was fired because of "what…happened between [Park and Kim]," and the concern that they "would not be able to work together anymore" after Park had made her complaints and Pulsarlube had conducted its month-long investigation.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the record in the light most favorable to the non-moving party, and I draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

### III. DISCUSSION

#### A. Hostile Workplace Sexual Harassment

##### 1. Alleged Harasser's Conduct

Title VII of the Civil Rights Act disallows workplace discrimination against an

6

employee "with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Retaliation against an employee for his or her voicing a complaint about an unlawful employment practice is also forbidden under Title VII, 42 U.S.C. § 2000e–3(a). Such illegal discrimination can take the form of sexual harassment or retaliation against an employee who has objected to such discriminatory treatment. *Phelan v. Cook County*, 463 F. 3d 773, 782-83 (7th Cir. 2006); *Kampmier v. Emeritus Corp.*, 472 F. 3d 930, 939 (7th Cir. 2007).

For an employee to establish a prima facie sexual harassment claim, she must prove that "(1) she was subjected to unwelcome harassment; (2) the harassment was based on sex; (3) "the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff;" and (4) there is a basis for employer liability." *Robinson v. Sappington*, 351 F. 3d 317, 328-29 (7th Cir. 2003) (quoting Parkins v. Civil Constructors of Illinois, Inc., 163 F. 3d 1027, 1032 (7th Cir. 1998).

"In order to survive summary judgment…a plaintiff must present evidence that would establish that the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment in violation of Title VII." *Robinson*, 351 F. 3d at 329 (quoting *Russell v. Bd. Of Trs. Of the Univ. of Ill. at Chi.*, 243 F. 3d 336 (7th Cir. 2001); *see also Jackson v. Co. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007). The hostile conduct in question must have been "both objectively and subjectively offensive." *Rhodes v. Ill. Dep't of Transp.*, 359 F. 3d 498, 505 (7th Cir. 2004). To determine whether the conduct was objectively offensive, courts consider "the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the alleged victim's work

performance." *Kampmier*, 472 F. 3d at 941 (citing *Hostetler v. Quality Dining, Inc.*, 218 F. 3d 798, 806-07 (7th Cir. 2000)).

In the Seventh Circuit, workplace conduct of a sexual nature that is upsetting to an employee is not automatically actionable. Some level of physical touching may occur without implicating sexual harassment. For example, an "allegation that supervisor pulled back the plaintiff's shirt to see her bra" did not constitute sufficiently severe conduct. *McPherson v. City of Waukegan*, 379 F. 3d 430, 434, 439 (7th Cir. 2004). Similarly, a supervisor's rubbing the plaintiff's back did not rise to the level of actionable sexual harassment. *Hilt-Dyson v. City of Chicago*, 282 F. 3d 456, 463-64, 7th Cir.(Ill.), Feb. 27, 2002. "[A]mbiguous comments about bananas, rubber bands, and low-neck tops, staring and attempts to make eye contact, and four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks" were also insufficient. *Adusumilliv. City of Chicago*, 164 F. 3d 353, 361-62 (7th Cir. 1998). A plaintiff's allegation that a coworker frequently walked behind where she and other female coworkers stood at a counter, turning sideways to brush his groin against them as he passed did not constitute severe enough conduct to be objectively offensive. *Henneman v. Airtran Airways*, 705 F. Supp. 2d 1012, 1027 (E.D. Wis. 2010). Other physical behavior, even when isolated, does rise to the level of objectively offensive conduct. For example, an allegation that an employee's supervisor "came up alongside her and stroked her face, hair, and nose and…stuck his hand down her dress and placed it directly onto her breast…approximately one inch away from her nipple and kept it there for several seconds" was sufficient to constitute a hostile work environment. *Worth v. Tyer*, 276 F. 3d 249, 257, 268 (7th Cir. 2001).

Verbal comments may also constitute sexual harassment, but only when sufficiently offensive and frequent. *See Scruggs v. Garst Seed Co*., 587 F.3d 832, 841 (7th Cir. 2009). For

example, in *Patt v. Family Health Systems, Inc.*, the Seventh Circuit determined that eight "isolated and sporadic" comments made by the alleged harasser, including saying that "the only valuable thing to a woman is that she has breasts and a vagina" did not qualify as "severe or pervasive harassment." 280 F. 3d 749, (7th Cir. 2002). Likewise, in *Rhodes v. Illinois Department of Transportation*, the Seventh Circuit affirmed a district court's finding that a plaintiff's "isolated complaint" of finding a "pornographic picture taped to her locker" did not put her supervisors on notice of "pervasive and obvious" harassment. 359 F. 3d at 507.

There is little doubt that Park genuinely felt that Kim's actions were "subjectively offensive". *Rhodes*, 359 F. 3d at 505. However, even assuming *arguendo* that all of Park's allegations against Kim were reported to supervisors at Pulsarlube, only Park's most severe allegations may actually constitute "objectively offensive" sexual harassment. *Id*. Behavior such as Kim's cursing in Park's presence, following her with his gaze, overhearing her phone conversations, and entering and exiting the building at the same time as Park do not rise to the level of severity required for actionable sexual harassment. As in *Asusimilli* and *Henneman*, Kim's occasional bodily contact with Park, especially in the course of performing his work duties in a compact space, is also insufficiently severe and pervasive. Kim's complimenting Park's appearance and telling her that he would like to sleep with his arms around her in a corner are "mere offensive utterances" that cannot be deemed severe enough to constitute sexual harassment. *Harris v. Forklift Systems, Inc.*, 114 S. Ct. 367, 369 (1993).

Park's most severe complaints against Kim are that he briefly showed her a picture of a naked woman on his iPad after she had agreed to help him delete images from the iPad, and that he "tr[ied] to kind of touch or pat on, you know [her breasts]." Kim's alleged attempt to touch or pat Park's breasts falls somewhere between *Asusimilli*'s unactionable brief touching of the

9

plaintiff's buttocks and *Worth*'s actionable insertion of his hand down the plaintiff's dress and holding his hand an inch away from her nipple for several seconds. *Worth*, 276 F. 3d at 268. The record, including Park's deposition, is devoid of sufficient details of this incident to make a definitive determination. Nevertheless, even if the iPad incident or Kim's attempt to touch or pat Park's breasts did constitute sexual harassment, Park's claim would still fail because of a lack of employer liability on the part of Pulsarlube.

### 2. Employer Liability

The fourth prong in proving a sexual harassment claim requires proof of employer liability. *Kampmier*, 472 F. 3d at 939. Allegations of sexual harassment perpetrated by a coworker and by a supervisor are treated differently under Title VII. *See Parkins v. Civil Constructors of Ill., Inc.*, 163 F. 3d 1027, 1032 (7th Cir. 1998). "'Supervisor' is a legal term of art for Title VII purposes, and an employee merely having authority to oversee aspects of another employee's job performance does not qualify as a supervisor in the Title VII context." *Rhodes*, 359 F. 3d at 506 (citing *Hall v. Bodine Elec. Co.*, 276 F. 3d 345, 355 (7th Cir. 2002)). In the Title VII context, a supervisor means someone who has the "power to hire, fire, demote, promote, transfer, or discipline an employee." *Parkins*, 163 F.3d at 1034; see also *Hall*, 276 F. 3d at 355. A defendant employer may only be found liable for the objectionable conduct of the plaintiff's coworker "where the plaintiff proves that the employer has 'been negligent either in discovering or remedying the harassment.'" *Rhodes*, 359 F. 3d at 505-06 (citing *Parkins*, 163 F.3d at 1032).

Park's argument that Kim was legally her supervisor rather than her coworker fails. The fact that Kim taught Park how to perform her job is easily explained by his employment at Pulsarlube predating hers. Park simply being told by Jeong to follow Kim's directions does not elevate Kim to the status of Park's supervisor in the legal sense under Title VII. Kim did not

have the "power to hire, fire, demote, promote, transfer, or discipline" Park, meaning he was not her supervisor for Title VII purposes. *Parkins*, 163 F.3d at 1034. Therefore the analysis of Kim's behavior and Pulsarlube's handling of Park's accusation must properly proceed under the coworker framework.

In order to prove the employer's negligence in discovering or remedying harassment by a coworker, "the employee must give 'the employer enough information to make a reasonable employer think that there was some probability that she was being sexually harassed.'" *Erickson*, 269 F. 3d at 606 (citing *Zimmerman v. Cook County Sheriff's Dep't*, 96 F.3d 1017, 1019 (7th Cir. 1996)). Park provided Pulsarlube this information when she complained to Shin in October of 2013, thereby satisfying this requirement. At that point, Pulsarlube assumed the burden to respond appropriately to Park's allegations.

Liability does not immediately attach once the employer has enough information to believe that sexual harassment has occurred. If the employer takes remedial steps "reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made," it may avoid liability. *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 480-81 (7th Cir. 1996) (citing *Brooms v. Regal Tube Co.*, 881 F. 2d 412, 421 (7th Cir. 1989) (internal quotation omitted)). The focus of the inquiry at this point is whether the employer took appropriate steps to prevent the harassment from recurring, not whether the employer took the punitive actions that the plaintiff felt to be necessary. *See Lapka v. Chertoff*, 517 F. 3d 974, 984 (7th Cir. 2008); see also *Tutman v. WBBM–TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1049 (7th Cir. 2000).

Even before Park informed Shin of the bulk of her complaints against Kim in October 2013, Park's direct supervisor Jeong had taken small steps to remedy Kim's minor behaviors that

bothered Park, yet did not rise to the level of sexual harassment. For example, when he observed Kim encroaching on Park's space at lunch, he asked Park to change seats. Jeong also observed Kim unnecessarily touching Park with his limbs during a meeting and responded by instructing Kim to stop.

When Park eventually brought her full complaint to Shin, Shin also took quick action to remedy the situation, demonstrating that she took Park's distress seriously. Shin discussed Park's complaint with Kim, warned him that the sharing of inappropriate images at work was strictly prohibited, and told him to be careful going forward. Kim represented to her that he understood her warning. Shin also consulted Jeong and told him to keep an eye on the situation. She also asked him if it would be possible to change the location of Park or Kim's workstations so that they would be further physically separated, and to that end, Park was eventually given UPS work because it would allow for less interaction with Kim. Shin fielded a call from a police officer investigating Park's report and brought Kim in to participate in the phone call. She told Park to write down her complaints and asked her for more detailed information to support those complaints. She dutifully forwarded that information to Pulsarlube's counsel for advice about whether Kim's behavior constituted harassment and what action the company should take in response to Park's complaints.

In fact, it appears that in responding to Park's complaint, Pulsarlube's representative Shin did exactly what a company should do in order to avoid liability for coworker sexual harassment. She gathered as much information as possible from Park and took action to make sure that the harassment, if it ever had occurred, would not occur again. Moreover, Park's only complaints about Kim's behavior during the period after she reported him to Shin describe behavior that does not constitute sexual harassment by any stretch of the imagination, such as

complaints that Kim put grease pouches too close to her work station and walked too close to her work station while retrieving boxes. The nonoccurrence of sexual harassment after Park reported Kim to Shin and Shin initiated the investigation demonstrates that Pulsarlube's remedial steps "reasonably calculated to prevent further harassment" were, in fact, successful. *McKenzie*, 92 F.3d at 480-81 (citing *Brooms*, 881 F. 2d at 421) (internal quotation omitted).

    **B.**    **Retaliation**

A plaintiff can either establish her Title VII retaliation claim under the direct or indirect method. *Kampmier*, 472 F. 3d at 939, citing *Logan v. Kautex Textron N.A.*, 259 F. 3d 635, 638-39 (7th Cir. 2001). Under the indirect method, "a plaintiff must show that after filing the [complaint of discrimination] only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." *Kampmier*, 472 F. 3d at 939 (citing *Stone v. City of Indianapolis*, 281 F. 3d 640 (7th Cir. 2002)).

Park cannot proceed under the indirect method because she has not put forth evidence of a similarly situated employee who did not file a charge and was not subjected to the same adverse employment action that she was. To the contrary, Kim was also fired even though he did not submit any harassment complaint and Pulsarlube concluded in its investigation that he had not sexually harassed Park.

Under the direct method, "[t]o establish a prima facie case of retaliat[ion], the plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) that there is a causal link between the protected expression and the adverse action." *Collins v. Illinois*, 830 F. 2d 693, 702 (7th Cir. 1987) (citing *Jennings v. Tinley Park Consolidated School District No. 146*, 796 F. 2d 962, 966-67 (7th Cir. 1986)). With

regard to the first prong, a valid retaliation claim "does not require that the challenged employment practice actually violate Title VII," but rather "it is sufficient if the plaintiff has a reasonable belief that there is a Title VII violation." *Id*. With regard to the causation element, the mere fact that the adverse employment action follows the filing to the complaint does not "standing alone…create a genuine issue." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir. 1992).

Considering that Park had been exposed to some degree of inappropriate touching and had been shown a nude picture by her coworker, it is fair to conclude that she had a reasonable belief that Kim's behavior violated Title VII. Therefore the first prong is satisfied. Second, Park did suffer an adverse employment action—she was fired in January of 2014. Third, Park alleges the third prong is satisfied in that her termination was motivated by her sexual harassment complaint.

If the plaintiff makes out a prima facie case for retaliation, the burden shifts to the defendant to provide a "legitimate, nondiscriminatory" reason for the adverse employment action. *Allen v. Am. Signature, Inc.,* 272 Fed. Appx. 507, 511 (7th Cir. Ind. 2008) (citing *Moser v. Ind. Dep't. of Corr.*, 406 F. 3d 895, 903 (7th Cir. 2005)). Once this reason has been proffered by the defendant, the plaintiff "must show a genuine issue of fact that the reason is a pretext for discrimination. *Allen v. Am. Signature, Inc.,* 272 Fed. Appx. 507, 511 (7th Cir. Ind. 2008) (citing *Ptasznik v. St. Joseph Hosp*., 464 F. 3d 691, 696 (7th Cir. 2006)).

Assuming that Park has made out a prima facie case for retaliation, the burden shifts to Pulsarlube to provide its genuine, nondiscriminatory rationale for terminating her employment. Pulsarlube maintains that Park's frequent outbursts, yelling, and need to be assigned different work so that she could be physically farther away from Kim had made other employees

14

uncomfortable and disrupted the workplace as well as the productivity and efficiency of the office. Park claims that this is mere pretext, asserting that the timing of her termination is suspect because it only occurred after she complained about Kim to Shin. However, Park provides no evidence to support this claim. As discussed above, suspect timing alone is not enough to establish even prima facie causation, let alone to rebut Pulsarlube's proffered nondiscriminatory reasoning. Shin and Jeong both witnessed Park's disruptive yelling and repeated complaints about Kim's behavior, including behavior that did not even approach the sexual harassment threshold. Park gave the police Shin's personal cell phone number and Shin was forced to diffuse the situation when Park's adult children came to the workplace to confront her alleged harasser. Finally, Pulsarlube was forced to reshuffle work assignments so that Park had less exposure to Kim. Without further proof from Park that Pulsarlube's nondiscriminatory rationale for her dismissal was a pretextual lie, Park's retaliation claim must fail.

I also note that Park very well may have a state claim if she chooses to pursue one, but her claim against Pulsarlube is unavailing.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion is granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 30, 2016